IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
*Eastern Division*

UNITED STATES FIDELITY AND
GUARANTY COMPANY,

    Plaintiff

v.      No.

AMERICAN GUARANTEE & LIABILITY
INSURANCE COMPANY,
Serve c/o Director of Insurance
301 W. High Street, Room 530
Jefferson City, MO 65101

JESUS SILVA AND ROSE SILVA,
Serve at:
4527 W. Shubert
Chicago, IL 60639

and

JOSE RODRIGUEZ AND GUADALUPE
RODRIGUEZ
Serve at:
P.O. Box 368
San Miguel, NM 88058

    Defendants

FILED
APR 19 2006
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO

4 06CV00655RWS

## COMPLAINT FOR DECLARATORY RELIEF

United States Fidelity and Guaranty Company ("USF&G"), through undersigned counsel, hereby brings this Complaint for Declaratory Relief against the above-named defendants, pleading as follows:

1

## THE PARTIES

1. Plaintiff USF&G is an insurance company organized and existing under the laws of Maryland, with its principal place of business in Maryland.

2. Defendant American Guarantee & Liability Insurance Company ("American Guarantee") is, on information and belief, an insurance company organized and existing under the laws of New York, with its principal place of business in Illinois.

3. Defendants Jesus Silva and Rose Silva are, on information and belief, residents of Illinois.

4. Defendants Jose Rodriguez and Guadalupe Rodriguez are, on information and belief, residents of New Mexico. (The Silvas and Rodriguezes are collectively referred to herein as "the Judgment Creditors.")

5. As described further herein, the Judgment Creditors are plaintiffs in a Missouri state court action captioned <u>Jesus Silva, et al. v. Consolidated Freightways, et al.</u>, Case Nos. 022-10272 and 022-11133 (the "Underlying Action"), currently pending in the Circuit Court of the City of St. Louis, Missouri, and in that capacity have obtained a judgment or judgments in the Underlying Action against Consolidated Freightways ("CF"), a bankrupt and dissolved Delaware corporation that had its principal place of business in Washington, in the total amount of approximately $46,000,000.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1332(a) because of the diversity of citizenship of the parties and because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 for the purpose of determining an actual controversy between the parties concerning the

2

extent and scope of obligations owed under an insurance policy issued by USF&G.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events that give rise to USF&G claim for declaratory relief occurred in this judicial district, the judgment in the Underlying Action was entered in this district, USF&G shortly will seek to deposit funds into the registry of a Missouri Circuit Court in this district, and the defendants are subject to personal jurisdiction in this district.

## THE INSURANCE POLICIES

### The USF&G Policy

8. USF&G issued Commercial Insurance Policy No. D003A00018 (the "USF&G Policy") to CF for a policy period of October 1, 2001, to October 1, 2002.

9. A true and correct copy of the USF&G Policy is attached hereto as Exhibit 1

### The Insolvent Excess Policy

10. Upon information and belief, CF had a policy of excess insurance that afforded $3 million of coverage, pursuant to unknown terms, immediately excess of the layer of coverage afforded by the USF&G Policy.

11. Upon information and belief, that policy was issued by a "captive" of CF and is insolvent.

### The American Guarantee Excess Policy

12. American Guarantee issued Commercial Umbrella Liability Policy No. AUC 2962756 03 (the "American Guarantee Policy") to CF for a policy period of October 1, 2001, to October 1, 2002.

13. A true and correct copy of the version of the American Guarantee Policy that has been provided to counsel for USF&G is attached hereto as Exhibit 2.

14. The American Guarantee Policy affords excess liability coverage subject to a limit of $50 million per occurrence. The American Guarantee Policy purports to be "excess" above certain insurance listed in a "Schedule of Underlying Insurance" that includes a space for, inter alia, "Commercial Auto Liability." The Schedule contained in Exhibit 2 is blank and it is not currently known if the American Guarantee Policy as actually issued included references to the USF&G Policy, the policy believed to have been issued by a now-insolvent "captive" of CF, or any other policy in the space provided.

15. The American Guarantee Policy provides, in part, that American Guarantee has the "right and duty" to assume control of the insured's defense "when the applicable limit of underlying insurance has been exhausted by payment of claims." In that instance American Guarantee also must pay, "to the extent that they are not included in underlying insurance," various supplementary payment amounts including, inter alia, "[t]he cost of bonds to release attachments, but only for bond amounts within the amount of insurance available"; "[c]osts taxed against the insured in the suit"; "[p]re-judgment interest awarded against the insured on that part of the judgment we pay"; and "[a]ll interest on the full amount of any judgment that accrues after the entry of the judgment and before we have paid, offered to pay, or deposited in court that part of the judgment that is within the applicable Limits of Insurance."

## The Underlying Action

16. The Underlying Action involves claims for wrongful death arising from a multi-vehicle collision on Interstate 44 near Joplin, Missouri, on May 18, 2002. Jesus Silva and Rosa Silva asserted claims based on the death of their adoptive son, Jose Silva, and Jose Rodriguez and Guadalupe Rodriguez asserted claims based on the death of their daughter, Ana Silva. Among the defendants named in the Underlying Action

4

was Consolidated Freightways, the common insured of USF&G and American Guarantee. Although Consolidated Freightways, at the time the Underlying Action was filed, was in bankruptcy in a bankruptcy proceeding pending in the United States District Court for the Central District of California, upon information and belief the Judgment Creditors secured an order granting relief from the bankruptcy stay that allowed them to pursue the Underlying Action only to the extent of available insurance.

17. Following various pre-trial settlements with other parties, the Judgment Creditors' case came on for trial in the Circuit Court of the City of St. Louis, Missouri, the Honorable Donald L. McCullin, presiding, in February 2006. The jury returned a verdict awarding Jesus and Rose Silva $25,280,000 for the injuries and death of Jose Silva and awarding Jose Rodriguez and Guadalupe Rodriguez $20,780,000 for the injuries and death of Ana Silva. The Circuit Court subsequently entered a judgment on March 7, 2006, reflecting those amounts.

18. The Judgment Creditors have filed a motion for the award of pre-judgment interest, in a total claimed amount of approximately $9 million, based on CF's non-acceptance of a $20 million settlement demand purportedly made in November 2003. In addition, upon information and belief, the Judgment Creditors assert that post-judgment interest, at the statutory rate of 9%, began accruing upon the Circuit Court's entry of the March 7 judgment. These issues, along with CF's motions for various forms of post-trial relief, including judgment notwithstanding the verdict, new trial, and remittitur, remain pending before the Circuit Court.

### The Need For Declaratory Relief

19. USF&G shortly will seek leave of the Circuit Court to deposit into court $5 million.

5

Such deposit will, in USF&G's view, fulfill any obligations with respect to payment of judgment amounts under or in connection with the USF&G Policy. Thus, in USF&G's view, such deposit constitutes an exhaustion of its Policy and, moreover, terminates whatever additional payment obligations USF&G might otherwise owe to Judgment Creditors, whether such additional amounts represent damages, costs, pre-judgment interest, or post-judgment interest.

20. USF&G also has no responsibility for payment of any pre-judgment interest that may be found to have accrued prior to the exhaustion of the USF&G Policy, including because the Judgment Creditors contend that CF's responsibility to pay pre-judgment interest was triggered by CF's non-acceptance of a settlement demand that exceeded by $15 million any obligation even arguably owed by USF&G under the USF&G Policy.

21. There is also the need for a declaration concerning whether USF&G, separate and apart from the exhaustion of the USF&G Policy, has any obligation with respect to whatever amount of post-judgment interest, if any, may be found to have accrued prior to the exhaustion of the USF&G Policy.

22. The dollar amounts of the judgment and of the pre- and post-judgment interest that may be awarded in the Underlying Action are such that the respective rights and obligations of USF&G, American Guarantee, and the Judgment Creditors need to be resolved. A prompt judicial declaration of the respective obligations of USF&G and American Guarantee will assist all parties and facilitate the orderly resolution of various disputes, including the Underlying Action.

## USF&G's Requests For Declaratory Relief

## Count I – For A Declaration That USF&G's Deposit Of $5 Million Into Court Constitutes An Exhaustion Of The USF&G Policy

23. USF&G hereby restates, as if fully rewritten herein, the averments set forth in Paragraphs 1 through 22 above.

24. The Court should declare that USF&G's payment or deposit of $5 million effects an exhaustion of the USF&G Policy, thus terminating USF&G's obligations.

## Count II – For A Declaration With Respect To USF&G's Obligations, If Any, With Respect to The Payment of Accrued Pre-Judgment Or Post-Judgment Interest, If Any t

25. USF&G hereby restates, as if fully rewritten herein, the averments set forth in Paragraphs 1 through 24 above.

26. Separate and apart from the exhaustion of the USF&G Policy, the Court should declare that USF&G has no obligation to pay pre-judgment interest, if any, that may have accrued on the Judgment Creditors' judgment, and should declare the extent of USF&G's obligations, if any, with respect to post-judgment interest under the USF&G Policy.

## PRAYER FOR RELIEF

WHEREFORE, USF&G prays that this Court (a) enter judgment declaring that USF&G's payment or deposit of $5 million effects an exhaustion of the USF&G Policy, thus terminating USF&G's obligations; (b) enter judgment declaring that, separate and apart from the exhaustion of the USF&G Policy, USF&G has no obligation to pay pre-judgment interest, if any, that may have accrued and further declaring the extent of USF&G's obligations, if any, with respect to post-judgment interest; (c) award USF&G its costs and reasonable attorney's fees; and (d) grant

7

USF&G such other and further relief as the Court may deem appropriate.

Dated: April 19, 2006                                Respectfully submitted,

*Martin J. Buckley* by APS
_____
Martin J. Buckley     #2743
Adrian P. Sulser      #4499
BUCKLEY & BUCKLEY, L.L.C.
1139 Olive Street, Suite 800
St. Louis, MO 63101
Telephone: (314) 621-3434
Facsimile: (314) 621-3485

Peter G. Thompson
Stephanie Pestorich Manson
THOMPSON, LOSS & JUDGE, LLP
1919 Pennsylvania Avenue, NW
Suite M-200
Washington, DC 20006
Telephone: (202) 772-5170
Facsimile: (202) 772-5180

Counsel for United States Fidelity and
Guaranty Company

8